UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY MASSIE<br><br>        Plaintiff<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. EDCV 15-02147-KS<br><br>**MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

On December 16, 2015, Plaintiff, Larry Massie ("Plaintiff"), filed a Complaint seeking judicial review of a denial of his application for disability insurance benefits ("benefits".) (Complaint, ECF No. 1.) On November 16 and 17, 2015, pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the undersigned United States Magistrate Judge. (Consents, ECF Nos. 11, 13.) On March 11, 2015, the parties filed a Joint Position Statement, whereby Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and Defendant seeks an order affirming the Commissioner's decision or, in the

alternative, remanding the matter for further administrative proceedings. (Joint Statement, ECF No. 17). The Court has taken the Joint Statement under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On September 23, 2012, Plaintiff, born on December 27, 1964[1], filed an application for benefits, alleging disability beginning October 27, 2011 due to degenerative disc disease of the lumbar spine, inguinal hernia, and prostatitis. (Administrative Record ("A.R.") 14, 16-17, 32.) Plaintiff's claim was denied initially on March 6, 2013 and upon reconsideration on June 14, 2013. (A.R. 14; 95-99; 101-06.) On July 18, 2013, Plaintiff requested a hearing, which was held on January 21, 2014. (A.R. 14; 107-09.) Administrative Law Judge Keith Dietterle ("ALJ") presided over the hearing which included testimony by an impartial medical expert ("ME") Dr. Steven Epstein, M.D., a vocational expert ("VE"), and Plaintiff, who was represented by an attorney. (*Id*. at 14, 27-29, 51-53, 54-56.) Dr. Epstein reviewed Plaintiff's medical file, summarized their findings, and opined that Plaintiff "would be limited to [lifting] 20 pounds occasionally, 10 pounds frequently . . . could stand or walk for [sic] hours of an eight hour day, sit for six hours of an eight hour day . . . could climb stairs and ramps occasionally . . . would [not] be able to climb ropes, ladders, or scaffolds," without "any indication of restriction of the upper extremities." (A.R. 53.)

Plaintiff's past work consisted of four jobs as described by the VE: furniture sales (DOT 270.357-030), installer (DOT 869.684-026), stock clerk (DOT 299.367-014), and cashier (DOT 211.462-010.) (A.R. 54-55.) Presented with a hypothetical

---

[1] At the time of his hearing, Plaintiff was 49 years old, within the classification of "younger persons," *i.e.* those persons under age 50, but was within 11 months of being classified in the category of "persons closely approaching advanced age" who are persons age 50-54. 20 C.F.R. § 404.1563(c)-(e). In such a "borderline situation," an ALJ has discretion, but is not required, to use the older age category, and also is not obligated to explain his choice in his written decision. *Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1070 (9th Cir. 2010) (citing *Id*. § 404.1563(b)).

2

individual of Plaintiff's age, educational background who is able to "sit six hours in an eight hour day, stand and walk only four hours in an eight hour day; can occasionally lift 20 pounds; frequently lift 10 pounds; can occasionally climb stairs; can never climb ladders, scaffolds, or ropes; can occasionally balance, stoop, kneel, crouch, and crawl" but cannot "work at unprotected heights, around dangerous or fast moving machinery," the VE testified that such an individual could perform the work of furniture sales. (A.R. 55.) When the ALJ added a further limitation that the individual "would be off task 20 percent of the day," due to pain, the VE indicated that the individual would not be able to do the furniture sales job or any job in the labor market. (A.R. 55-56.) The VE similarly testified that a hypothetical individual who would "miss three or more days per month from work" because of pain would not be able to sustain employment. (A.R. 56.)

In a written decision dated April 8, 2014, the ALJ denied benefits. (A.R. 11-26.) On September 2, 2015, the Appeals Council denied Plaintiff's request for review of that decision. (A.R. 1-4.) Plaintiff then filed this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ utilized the five-step sequential evaluation process to determine whether Plaintiff was disabled. 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity, since October 27, 2011, the alleged disability onset date. (A.R. 16.) At step two, the ALJ found that Plaintiff suffered from severe, and medically determinable, impairments consisting of degenerative disc disease of the lumbar spine ("DDD"), inguinal hernia and prostatitis. (A.R. 15.) At step three, the ALJ applied the guidelines for evaluation (contained in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526), and found that

the severity of Plaintiff's impairments did not meet or "equal" the criteria contained in the appropriate listings 1.04. (A.R. 17-18.)

At the fourth step, the ALJ assessed that Plaintiff had a residual functional capacity ("RFC") "to perform light work as defined in 20 C.F.R. 404.1567(b) except with the following limitations: sit 6 hours of an 8 hour day, stand and walk 4 hours of an 8 hour day, lift and carry 20 pounds occasionally and 10 pounds frequently; occasionally climb stairs, balance, stoop, kneel, crouch and crawl; no climbing ladder, ropes, scaffolds; no unprotected heights, dangerous or fast moving machinery." (A.R. 18.) At the last step of the sequential evaluation process, the ALJ concluded, considering Plaintiff's RFC, age, education and work experience that Plaintiff is capable of performing his past work in furniture sales as generally performed. (A.R. 21.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The Court will also not reverse the Commissioner's decision "[w]here evidence is susceptible to

more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)  Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Courts must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140-42 (9th Cir. 2014).

**DISPUTED ISSUE**

Plaintiff challenges the ALJ's decision on the single issue of whether the ALJ properly evaluated Plaintiff's credibility. (Joint Statement at 2.)

**DISCUSSION**

**A. Applicable Law**

Before determining that a claimant's pain or symptom testimony is not credible, an ALJ must make two findings. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015)*; Smolen v Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick ,* 157 F.3d at 722). "Once a claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely

6

because they are unsupported by objective evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citation omitted).

Here, the ALJ's rationale for discounting Plaintiff's testimony meets the above requirements.

**B. Plaintiff's Statements And Testimony**

Plaintiff testified at the hearing that his "back problems have existed for quite some time " but "[t]he issue with [his] pelvis was after the bilateral inguinal repair" surgery in 2011 and causes pain in his pelvis "into [his] groin specifically on the right-hand side to [his] right testicle," radiating "up into the right hand side of [his] waist." (A.R. 37-38.) He experiences "heavy spasming and convulsions on the right-hand side in [his] pelvis," if he has stood or walked for too long. (A.R. 38-39.) He takes "bisacodyl" for bowel-related problems, and has had two MRIs on his back in 2009 and 2012. (A.R. 39.) He stated that epidural injections helped "[f]or a very short period of time," and "knocked [him] down to a pain level of about three or four," and "[t]rigger point injections allowed musculature in [his] spine to relax a little bit but were pretty much ineffective." (A.R. 35-36.) Plaintiff takes gabapentin for pain relief directed at his spine, and for seizures. (A.R. 40.) When asked about side effects from his medication, Plaintiff stated that he experiences bad nightmares due to his depression medication, amitriptyline, which regularly causes him to wake up after two and a half hours of sleep. (A.R. 49.) As a result, he requested and was given a reduced prescription for amitriptyline. (*Id*.) When asked about seizures, Plaintiff stated that he "had an incident in January [2014]." (A.R. 39-40.)

Plaintiff indicated he was "having difficulty" sitting during the hearing, and

7

said his comfort depending on the chair, and he could sit comfortably "maybe 45 minutes to an hour" before needing to stand. (A.R. 41.) He stated that he "walk[s] an hour every night but [he] get[s] 20 minutes to a half hour into that walk . . . to a bench where [he] sit[s] down . . . relax[es] for 10 to 15 minutes; usually make[s] a phone call to occupy [his] time, and then . . . head[s] back toward the house, and as soon as [he get[s] there" is "back in bed with [his] knees elevated . . . because [he is] usually severely sore by that point." (A.R. 42.) He occasionally uses a staff that his father bought him for support while walking, and was "not lifting any weight" at the time of the hearing because his doctor asked him "not to lift more than a gallon of water or milk" due to problems with a tendon in his left arm, back and pelvis. (A.R. 42-43.) Plaintiff testified that he has trouble putting his socks on or bathing his legs. (A.R. 43.) He drives a car but seldom and "only to get [his] medications" and to doctor appointments. (A.R. 43.) He shops for groceries but does "not carry the groceries in the house," appears to request help from his housemates, and does "light grocery shopping in several trips so as to not have to push a lot of weight around the store in a shopping cart." (A.R. 44.) Although he does his own laundry he "take[s] them piece by piece out to the garage," to avoid "having to carry a heavy basket full of laundry." (A.R. 44.) He took two years off work in 2004 to help his ailing father into independent living. (A.R. 45.)

Plaintiff first complained of pain in his left arm in July 2012, was told it was probably just a hurt tendon, was instructed to ice it and avoid lifting more than a gallon of milk "and that it would eventually probably dissipate." (A.R. 47.) Subsequently, he was given a "band to isolate the tendon." (A.R. 47-48.) Plaintiff can still write, hold glasses, open doors and handles, and "button buttons." (A.R. 47.) Plaintiff underwent five physical therapy appointments for his back which he felt were "minimal at best," and he continues to "do some of those exercises" when he is able to. (A.R. 48.) Plaintiff indicated that he has gained weight due to lack

of physical activity. (A.R. 49.)

Plaintiff completed an Adult Function Report on December 12, 2012, where he stated that "walking, sitting, standing, bending, lifting as well as lying down are painful events due to issue w/pain from spine as well as intense pain in pelvis, ground and r[igh]t leg," that he has "limited movement at waist from degenerative discs." (A.R. 190.) He described his daily activities as including "light stretching, exercise[ ] on [his] bed . . . light meal followed by short 20 min[ute] walk," visit to the doctor if he has an appointment, "usually ice pelvis [and] back . . . followed by [a] nap due to lack of sleep [at] night," after which he "check[s] on [his] father . . . read[s], watch[es] TV or play[s] game for [a]while," followed by a "warm shower before dinner to ease muscle pain then dinner around 6 pm." (A.R. 191, 197.)

Plaintiff prepares his own meals daily and it takes between 5 and 35 minutes depending on the meal. (A.R. 192.) He does laundry and some general cleaning at "waist high" level, but requires help to clean floors, bathtubs and "anything below waist." (A.R. 192.) Plaintiff does not "do yard work due to medical issues and allergies." (A.R. 193.) He goes outside daily, either by walking, driving, or riding in a car, and is able to go alone. (A.R. 193.) He shops in stores for food, and toiletries, "every other week" for "about 20 min[utes]." (A.R. 193.) His hobbies include crosswords, games, TV, décor and visual displays, and spending quality time with friends and family. (A.R. 194.) He "usually [has] an hour or 2 before discomfort sets in and [he has] to move or lay down." (A.R. 194.) He socializes regularly, plays games, watches TV or videos, eats in or out and talks on the phone with others. (A.R. 194.) He reported that "other than visiting a friend or family all other social activities have stopped due to pain [and] discomfort." (A.R. 195.)

Plaintiff indicated on a check-box form that his conditions affect lifting,

9

squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, and using hands. (A.R. 195.) He states that he cannot lift more than 10 pounds, that squatting, bending, reaching, kneeling, and climbing, "all cause intense pain and are very difficult to get up from requiring help (such as using wall of table to get [himself] up)." (A.R. 195.) "Walking [and] standing are limited to max of 20 min – 2 ½ hrs due to pain from spine, pelvis, groin [and] rt [sic] leg." (A.R. 197.) Plaintiff can generally walk between .5 and 1 mile before needing to stop and rest for 10 to 15 minutes. (A.R. 195.) He can pay attention for an hour or two depending on his pain level, and his ability to follow instructions depends on his pain level. (*Id*.) Plaintiff indicated that he gets along "great" with authority figures, but he has not been handling stress well "right now," and stress "elevates [his] level of pain," impeding his hand eye coordination, ability to handle changes in routine and causes him to fear "for what the next day may bring." (A.R. 196.)

Plaintiff uses a non-prescription walking stick at home or when he needs assistance getting up or down to the floor level and going for walks. (A.R. 196.) He takes gabapentin, tramadol, tizanidine, and tamsulosin—all of which have side effects including dizziness and drowsiness, but tramadol causes seizures also. (A.R. 197.) On October 20, 2012, he had a "pretty bad seizure," causing him to stop "all pain killers," and get "checked for brain tumor," by a neurologist. (A.R. 198.)

//
//
//
//
//
//

**C. ALJ's Adverse Decision**

    **a. The ALJ Discounted Plaintiff's Credibility Based on the Medical Records**

The ALJ summarized Plaintiff's statements and testimony and found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (A.R. 18-20.) However, he discounted Plaintiff's testimony about the severity of his pain and related limitations because the medical evidence did not reflect the degree of severity that Plaintiff alleged. (*Id.* at 19.) Specifically, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effect of his symptoms to be "not entirely credible" and explained how Plaintiff's medical records undermine Plaintiff's credibility as to the severity of his impairments. (*Id.*)

The ALJ acknowledged that Plaintiff's "medical records are relatively voluminous," but noted that "objective findings have been minimal," treatment for his back "has been conservative," and the records showed improvement with treatment. (A.R. 20.) The ALJ noted: (1) MRIs of the lumbar spine in 2009 showing mild-to-moderate degenerative joint disease with only mild changes observed in 2011 (*id.*); (2) "no significant change" in April 2012, and a CT scan in February 2011 that showed unexceptional bladder, abdomen, and pelvis; (3) surgery was not recommended; and (4) conservative treatment (including trigger point and lumbar epidural steroid injections, and prescription medication that was without side effects) improved his pain, and back and leg symptoms (A.R. 18 *citing* March 2012, August 2012, and December 2012 injections).

Further, the medical sources that considered Plaintiff's various MRI tests did

11

not find the results significant. (A.R. 51-52 .) Plaintiff's physical exam results were "normal." (A.R. 51.) Plaintiff had one seizure apparently related to Tramadol, but he experienced no further seizures once he stopped taking the medication. (A.R. 52.) Medical sources, including Plaintiff's treating physician, observed improvement in his symptoms with medication. (*See, e.g*., A.R. 342 ("still on gabapentin . . . sleeping ok and helps with pain at night"); A.R. 345 ("Dr. Joung started [Plaintiff] on tramadol –pain better relief."); and A.R. 471 (Plaintiff stopped taking Tinazidine because of improvement in symptoms).)

The ALJ considered a November 2011 MRI and concluded that, in the context of other MRIs and the medical source opinions, it did not show significant problems. (A.R. 19.) Although the ALJ's statement that Plaintiff's prescription medication was without side effects is arguably contradicted by Plaintiff's statements and testimony,[2] given the other courses of treatment (such as injections and physical therapy), which improved his symptoms (A.R. 324; 332), it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec*., 454 F.3d 1050, 1055 (9th Cir. 2006).)

The record also includes the opinions of State agency review physicians and the testifying medical expert, who all opined that Plaintiff was capable of a range of

---

[2] The absence of side effects is contraindicated by observations that Tramadol may have caused an "isolated" seizure in October 2012. However, the record also indicates that Tramadol was prescribed on an "as needed" basis and after stopping its usage, Plaintiff experienced no further seizure episodes. (A.R. 197, 325-30; 342-44, 379, 470.) To the extent Plaintiff's statements also allege drowsiness and dizziness (amongst other side effects) caused by gabapentin, tizanidine, and tamsulosin (A.R. 197), his physician treatment records indicate a consistent absence of such side effects. (*See, e.g*., 2011-2012 treatment notes of Dr. Keong Joung, MD that Plaintiff was "neg for dizziness/diplopia/blurry vision," but "positive for insomnia,"(A.R 387, 390; 393, 396; 402; 407-08; 410-11; 413-14;. 418-19; 423-24). Treatment notes dated July 5, 2012 also reflect that Plaintiff has had "no problem with finasteride/tamulosin." (A.R. 349.) Dr. Joung consistently observed in his treatment notes in October, November, and December 2012 that Plaintiff takes gabapentin, tizanidine, and tramadol "as needed for pain, which helps with pain, w/o significant side effects." (A.R. 325-30; 333-35.)

light work (A.R. 51-53, 67-69, 84-86). In finding Plaintiff capable of a range of light work, the ALJ gave significant weight to the State agency physicians' opinions and substantial weight to the medical expert's opinion (A.R. 18-21, 51-53, 67-69, 84-86). Plaintiff does not challenge, and therefore concedes the propriety of these opinions or the ALJ's consideration of these opinions. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (because plaintiff does not challenge the ALJ's assessment of the medical opinion evidence through any substantive briefing or argument on appeal, any such issue is waived.) The ALJ also noted that "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor." (A.R. 20.) Plaintiff does not refute this observation.

Despite the record evidence of conservative treatment and improvement with medication, Plaintiff nonetheless asserts that he is precluded from all work based on his own statements and testimony, which he argues is supported by the medical records. (Joint Statement at 10 *citing* the November 2011 MRI results, treatment records reflecting Plaintiff's hernia surgery, "complaints" of back and groin pain dating from 2009 to 2013, and pain treatment including physical therapy, epidural injections, nerve blocks.) After considering the record as a whole, taking into account evidence both favorable and unfavorable to the ALJ's decision, the Court finds that the only evidence supporting Plaintiff's statements concerning the severity of his symptoms and limitations consists of: (1) treatment notes from October 2011 reflecting a positive "straight leg raise test, and [that Plaintiff] cannot tolerate the hip

to be externally or internally rotated because it causes pain in the low back," and that the plan included a referral to a pain management specialist (A.R. 364-65); (2) treatment notes from a July 5, 2012 visit, where Dr. Raymond Esparza stated that Plaintiff "needs to remain on disability" (A.R. 350); (3) a March 21, 2011 medical note from Dr. Esparza [3] stating "Effective immediately, please excuse [Plaintiff] from any lifting and squatting until further notice. Once he is cleared by the specialist a new note for full duties will be written" (A.R. 371); and (4) Dr. Esparza's treatment note indicating work restrictions of "no lifting no squatting" (A.R. 370). *See Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981) (an ALJ must consider facts that are both favorable and unfavorable to the claimant); *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'")(citations omitted).

Plaintiff contends that the ALJ "failed to provide clear and convincing reasons for rejecting [his] testimony and statements." (Joint Statement at 5.) However, as Plaintiff concedes, the ALJ did recognize that Plaintiff's physical "impairments limit his ability to perform some work related activities," and incorporated those limitations into the RFC "by restricting [Plaintiff] to performing work at the light exertional level and by restricting [him] to performing only occasional postural activities and preclusion of unprotected heights, dangerous or fast moving machinery." (*Id.*, *quoting* AR 20-21.) Therefore, even if the ALJ failed to provide adequate support for his adverse credibility determination, it appears that the ALJ did in fact credit Plaintiff's testimony in some fashion, because his RFC determination incorporated all the limitations for which there is record support—including the most restrictive limitations assessed by any medical source. *See Bayliss*, 427 F.3d at 1217.

---

[3] The March 2011 restrictions appear temporary in nature and pre-date the disability onset date in this case.

14

Nothing in the record suggests that the ALJ overlooked any assessed limitations, either from Plaintiff's own testimony or from medical sources in his RFC determination. To the extent the record contains contrary evidence suggesting that Plaintiff's complaints of pain were not exaggerated, it is the exclusive purview of the ALJ to resolve any ambiguities and inconsistencies in the record. *See Rollins*, 261 F.3d at 857. The ALJ's interpretation "may not be the only reasonable one," but the Court nevertheless finds his assessment to be reasonable and supported by substantial evidence. *Id.* "It may well be that a different judge, evaluating the same evidence, would have found [the plaintiff's] allegations of disabling pain credible." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). But this Court is not the trier of fact, and " [w]here, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the Court's] role is not to second-guess that decision." *Id*.

### b. The ALJ Discounted Plaintiff's Credibility Based on His Activities of Daily Living

The ALJ also found that Plaintiff's "relatively intact daily activities," including the ability to "perform personal care, do household chores, shop, take care of finances, drive and socialize," did "not support a finding that [Plaintiff's] impaired functioning will preclude all work." (A.R. 20. *See also* A.R. 17.) Plaintiff argues that he "is not required to stop living or functioning in the real world to receive disability benefits," and generally the ALJ "should not consider activities like taking care of oneself, household tasks, hobbies . . .to be substantial gainful activities." (Joint Statement at 7 *citing Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001) (quotation marks omitted)). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's

15

testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (citations and quotation marks omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

While "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication" here, the ALJ incorporated rest periods into his RFC assessment by finding Plaintiff could stand/walk for only four hours of an eight-hour day, and could sit for six hours of an eight-hour day. (Joint Statement at 8 *quoting Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)) (internal citation omitted). Indeed, the ALJ assessed greater limitations than the state agency physicians who opined that Plaintiff could stand/walk for six hours of an eight-hour day. (A.R. 66-68; 81-82.) Plaintiff spent most of his day engaging in stretching and exercise, going for daily walks, visits to the doctor, checking on his father, completing household chores, shopping for groceries, preparing meals, reading, watching TV, playing games and crosswords and talking on the phone with or visiting family and friends. (A.R. 191, 197.)

Although Plaintiff stated that he exercises in bed, ices his pelvis and back, takes warm showers to ease pain, and takes a nap due to lack of sleep at night, the ALJ's finding that Plaintiff's daily activities do not indicate a totally debilitating impairment is supported by substantial evidence in the record. (A.R. 191, 197.) To the extent the record could also support a finding that Plaintiff's complaints were not exaggerated, it is the ALJ's exclusive domain to resolve any ambiguities and inconsistencies. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the plaintiff's testimony was

somewhat equivocal about how regularly she was able to keep up with all of the activities.)

In light of the evidence of the ALJ's reliance on specific evidence from the medical record and Plaintiff's activities of daily living, the Court concludes that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's credibility as to the severity of his symptoms and functional limitations. Because the Court finds no legal error in the ALJ's decision, it must be upheld. *See Bayliss*, 427 F.3d at 1217.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 24, 2016

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE